```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MICHAEL BOWENS,
```

|  |  |
|---|---|
| USDS SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: _____ | |
| DATE FILED: 6-18-13 | |

                    Petitioner,                    12 Civ. 5591 (PKC)

       -against-

                                                   MEMORANDUM
                                                   AND ORDER
FEDERAL BUREAU OF PRISONS,

                    Respondent.
-----------------------------------------------------------x
P. KEVIN CASTEL, District Judge:

        Petitioner Michael Bowens, who is pro se, is currently incarcerated at the Federal Correctional Institution in Otisville, New York ("FCI Otisville"). He brings this writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that he was wrongly disciplined based on an innocent misunderstanding of facility rules, which, he contends, is the byproduct of his third-grade level literacy. Petitioner seeks money damages and equitable relief.

        For the reasons explained, the petition is denied.[1]

BACKGROUND.

        Petitioner is serving a 121-month sentence for money laundering and for participating in a conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana, after he entered a plea of guilty in the United States District Court for the Southern District of Indiana. United States v. Bowens, 08 Cr. 171 (S.D. Ind.) (WTL) (KPF). His projected release date is January 19, 2019. (DeSanto Dec. ¶ 3.) Because petitioner is currently

---

[1] The petitioner should have named as a respondent the natural person with "immediate custody" over him, and not the BOP. See, e.g., Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004). The government notes this oversight but does not contend that it warrants denial of the petition. (Opp. Mem. at 1 n.1.) In light of the petitioner's pro se status, the Court considers the petition on the merits.

housed in FCI Otisville, located in Orange County, New York, his petition is properly filed in this District. See 28 U.S.C. § 2241(a); Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004).

The petition arises out of four disciplinary sanctions that were administered for his conduct at Low Security Correctional Institution Allenwood ("LSCI Allenwood") in White Deer, Pennsylvania. (Pet. ¶ 12.) He was assigned to LSCI Allenwood from March 29, 2010 to May 26, 2011. (DeSanto Dec. ¶ 4.) Petitioner asserts that he was unable to understand the written policies of LSCI Allenwood because he functions at only a third-grade reading level. (Pet. ¶ 13.)

The petitioner does not dispute that he engaged in the underlying conduct for which he was sanctioned. While at LSCI Allenwood, petitioner received four incident reports for violating facility rules. (Pet. ¶ 15.) Petitioner asserts that the offenses included "allowing another inmate to use his email in an attempt to assist him as he watched" and "utilizing a third party call to contact a family associate named Daenicesha Heckard ('Ms. Heckard'), in order to secure payment for who had been helping with his disability." (Pet. ¶ 15.) The government's submissions describe the four incidents reports and disciplinary hearings in greater detail.

An incident report stated that the petitioner had engaged in an impermissible three-way call on November 14, 2010. (DeSanto Dec. Ex. A at 1.) A subsequent hearing was conducted to determine whether petitioner violated facility rules. At the hearing of December 16, 2010, petitioner confirmed that he understood his rights. (Id. at 3-5.) He called as a witness a facility staff member who testified that petitioner "read on about a third-grade level." (Id. at 5-6.) Petitioner stated during the hearing that he was unaware of any rule prohibiting a three-way telephone call. (Id. at 5.) The hearing officer rejected petitioner's contention that he was ignorant of facility rules and concluded that the petitioner had engaged in the impermissible call.

2

(Id. at 6.) Petitioner was sanctioned with disallowance of 27 days of good-time credit and a six-month loss of social telephone privileges. (Id. at 7.)

A second incident report issued at or about the same time asserted that petitioner violated facility rules by speaking in coded language during a November 6, 2010 telephone call. (Desanto Dec. Ex. B at 1.) According to the incident report, petitioner directed money transfers to various inmates while speaking in code. (Id.) The hearing officer described the conversations as "incredibly cryptic and coded in nature." (Id. at 7.) At a December 16, 2010 hearing, petitioner stated that he had a third-grade reading level, and was unaware that his conduct was against facility rules. (Id. at 5.) The hearing officer concluded that petitioner was provided with facility rules and regulations and was responsible for knowing them. (Id. at 7.) He sanctioned petitioner with disallowance of 27 days of good-time credit, a six-month loss of social telephone privileges and a three-month loss of commissary and social visiting privileges. (Id.)

On February 1, 2011, petitioner was issued a third incident report, after a LSCI Allenwood staff member observed petitioner sitting beside another inmate at an e-mail station. (DeSanto Dec. Ex. C at 1.) Petitioner told the staff member that the second inmate was typing his e-mails because he was not proficient at spelling. (Id.) At a February 7, 2011 hearing, petitioner asserted that his counselor had granted permission to get such assistance from other inmates. (Id. at 2.) At the hearing, both petitioner's counselor and a correctional officer testified that while they participated in discussions about petitioner "getting help" for using a computer, neither said that another inmate could type for petitioner. (Id. at 5.) The hearing officer concluded that the petitioner had violated facility rules, and that petitioner and the inmate who assisted him were each corresponding with a third party using separate pseudonyms. (Id. at 2.)

3

The hearing officer sanctioned petitioner with disallowance of 27 days of good-time credit and a four-month loss of e-mail privileges. (Id. at 6.)

On February 8, 2011, petitioner was issued a fourth incident report, after staff learned that on January 30 he initiated a phone call using another inmate's pin number. (Desanto Dec. Ex. D at 1.) Petitioner asserted that because he is illiterate, he was unable to understand the rules prohibiting such conduct. (Id. at 2.) At a March 3, 2011 hearing, the hearing officer concluded that petitioner had committed the prohibited act. (Id. at 8.) He was sanctioned to 30 days of disciplinary segregation, disallowance of 27 days of good-time credit, six months' loss of social telephone privileges and a disciplinary transfer. (Id.)

Petitioner states that, in total, his punishments included 18 months of lost phone privileges, a 3-month loss of visiting privileges, a 3-month loss of commissary privileges, a 4-month loss of computer use and a 5-month loss of good-time credit. (Pet. ¶ 16.) He states that he also was assigned to seven months of confinement in a Special Housing Unit ("SHU"), where he was isolated from the rest of the prison population and allowed limited access to recreation and showers. (Pet. ¶ 17.) Petitioner asserts that these punishments caused "tremendous" psychological damage and restricted his ability to administratively challenge his disciplinary process. (Pet. ¶ 18.) He contends that he should be permitted to proceed with this petition even though he has not administratively exhausted his claims. (Pet. ¶¶ 1, 21.)

Generously read and construing the petition in the light most favorable to the pro se petitioner, he asserts that he was denied due process, that his equal protection rights were violated, that he was denied the protections of the Americans with Disabilities Act (the "ADA"), and that he suffered intentional infliction of emotional distress. (Pet. ¶ 11.)

4

In addition to the petition, the government's memorandum in opposition and the petitioner's reply, the government has filed a sur-reply brief to address certain factual assertions raised in petitioner's reply memo, and the petitioner has filed a sur-sur reply.

DISCUSSION

      I.     Petitioner May Obtain Relief Under Section 2241 Only Insofar as He Challenges the Denial of Good Time Credits.

The petition seeks the restoration of good-time credits, expungement of negative incident reports, reassignment to a low-security facility, immediate reinstatement of "Ms. Heckard" to petitioner's visitors' list, and damages "not to exceed" $100,000. (Pet. ¶¶ 30-31.)

"A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001). Loss of good-time credits is properly challenged under section 2241 because it implicates a liberty interest that must be afforded at least minimal due-process protections. Id.; see also Ponte v. Real, 471 U.S. 491, 495 (1985). However, denial of privileges such as visitation, telephone use and commissary access cannot be brought pursuant to section 2241, because they are "not 'close to the core of habeas corpus' . . . ." Homen v. Hasty, 229 F. Supp. 2d 290, 295 (S.D.N.Y. 2002) (collecting cases).

Separately, a petitioner's claim for money damages is not cognizable under section 2241 unless his detention has been officially invalidated. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Jones v. Wainwright, 744 F. Supp. 2d 341, 344 (D.D.C. 2010) (applying Heck to section 2241 petitions). Because petitioner's detention has not been invalidated, he is not entitled to money damages.

5

To the extent that petitioner seeks relief that is not directed to the loss of his good time credits, the petition is therefore denied.

II. With the Exception of Claims Arising from the Incident of February 1, 2011, the Petition is Dismissed for Failure to Exhaust.

It is undisputed that petitioner administratively exhausted his internal appeals arising from the February 1 incident, but not as to the other three infractions for which he was sanctioned. (See, e.g., Reply at 2-4.) For the reasons explained, petitioner does not assert facts that excuse his failure to exhaust. Therefore, all claims arising from the first two incidents occurring in November 2010 and the third incident of February 8 2011 are dismissed.

Before filing a petition pursuant to 28 U.S.C. § 2241, an inmate must first exhaust administrative appeals. Carmona, 243 F.3d at 634. Although not required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), section 2241 exhaustion "is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same." Carmona, 243 F.3d at 634. Administrative exhaustion "could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds." Id. Failure to exhaust is excused only if the prisoner comes forward with evidence of "cause for his dereliction and consequent prejudice," and only then if cause-and-prejudice evidence outweighs the interests in judicial economy and accuracy behind the administrative exhaustion requirement. Id. at 633-34. Cause and prejudice may be established with evidence of "legitimate circumstances beyond the prisoner's control [that] preclude him from fully pursuing his administrative remedies . . . ." Id. at 634.

The United States Bureau of Prisons ("BOP") has adopted regulations that govern administrative appeals for inmate complaints concerning any aspect of incarceration. 28 C.F.R.

6

§ 542.10, et seq. To appeal a hearing officer's adverse determination, the inmate must first file an appeal to the BOP's designated regional director within 20 calendar days. 28 C.F.R. § 542.15(a). A negative decision from the regional director may be appealed to the BOP general counsel's office within 30 days. Id.

Petitioner acknowledges his "incomplete attempts to exhaust adequate administrative remedies," but asserts that exhaustion was made impossible by the BOP's actions and by his own limited literacy. (Pet. ¶¶ 1, 21.) He also asserts that his SHU confinement was a "blatant infringement on his ability to administratively challenge everything that he unjustly had undergone." (Pet. ¶ 18.)

As noted by the respondent, however, petitioner successfully exhausted his administrative remedies for the February 1 incident, wherein he was sanctioned for letting another inmate access his e-mail. (DeSanto Dec. ¶ 16 & Ex. F.) Petitioner also submitted a valid administrative appeal to the BOP regional director for sanctions arising out of the February 8 incident report. (Desanto Dec. ¶ 17.) His complete exhaustion of one infraction and his first-level appeal of a second contradict his representation that he was unable to administratively appeal his sanctions.

The Supreme Court has observed that when an inmate is illiterate, "he should be free to seek the aid of a fellow inmate" for assistance in responding to disciplinary charges. Wolff v. McDonnell, 418 U.S. 539, 570 (1974). Petitioner's administrative filings expressly state they were drafted with the help of other inmates. (DeSanto Dec. Ex. F at 1.) That express acknowledgment of such assistance contradicts the petitioner's assertions that he did not seek help from other inmates in appealing his sanctions because he feared official reprisal, thereby inhibiting him from administratively exhausting his sanctions. (Pet. ¶¶ 19, 22.) Moreover,

7

petitioner does not contend that any official threatened retaliation if he sought assistance on his administrative appeals. To the extent petitioner asserts that he feared reprisal, such a concern was subjective and not grounded in actual threats.

Lastly, petitioner offers only a generalized assertion that his limited reading and writing skills precluded him from administratively exhausting his remedies. Federal regulation requires that, in implementing the administrative appeals process, "[w]ardens shall ensure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English." 28 C.F.R. § 542.16(b). But unless a prisoner's request for such assistance is denied, a language-based impairment "does not amount to a special circumstance justifying departure from the exhaustion requirement . . . ." Baez v. Kahanowicz, 469 F. Supp. 2d 171, 179 (S.D.N.Y. 2007), aff'd, 278 Fed. Appx. 27 (2d Cir. 2008); cf. Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy does not establish cause for habeas petitioner's failure to exhaust post-conviction remedies in state courts). Petitioner makes no representation that he was denied any request for assistance.

For the foregoing reasons, all claims arising out of petitioner's two infractions of November 2010 and his infraction of February 8, 2011 are dismissed for failure to exhaust.

    III.    The Record Does Not Support Petitioner's Assertion of a Due Process Violation.

Petitioner asserts that the BOP's failure to provide assistance in pursuing his administrative remedies amounts to a denial of his due process protections under the Fifth Amendment. (Pet. at 8, ¶¶ 19, 26-27.) He states that his impaired reading ability prevented him from receiving notice of facility rules and from pursuing administrative appeals, and that the denial of good-time credits deprived him of a liberty interest. (Pet. ¶ 27.) Petitioner expressly disclaims any argument that the disciplinary hearings otherwise violated due process. (Reply

8

Mem. at 7-8.) See generally Benjamin v. Fraser, 264 F.3d 175, 190 (2d Cir. 2001) (explaining prisoner's due process rights in disciplinary hearings). During inmate disciplinary proceedings, every official who reviewed petitioner's illiteracy claims rejected them as a basis for relieving him of responsibility for the acts charged. (DeSanto Dec. Exs. A at 6; B at 6 (third-grade reading level did not relieve responsibility to know and follow institution rules); F ("Your contention you are illiterate and did not understand the rules as presented at A&O is not credible.").

Petitioner has set forth numerous, sometimes contradictory assertions about the notice that he received concerning facility rules and the administrative appeals process. The petition initially asserts that he "may have been given" a booklet of LSCI Allenwood policies, but that he was unable to read it. (Pet ¶ 13.) His reply memo, however, expressly asserts that he never received such a booklet. (Reply at 4, 5, 8.) The reply also asserts that he never signed the mandatory handbook-receipt form upon admission to LSCI Allenwood. (Reply at 8.)

The government's sur-reply includes evidence that petitioner did, in fact, receive such a handbook, signed for its receipt, and attended sessions explaining institution policies, including the administrative appeals process. In a form dated March 29, 2010, petitioner confirmed receipt of the BOP "Admissions & Orientation Booklet" that defines his "Rights & Responsibilities" and the "Prohibited Acts and Disciplinary Severity Scale." (Repecki Sur-Reply Dec. Ex. A.) Petitioner circled text on the form confirming that he received the booklet, and signed and dated the form. (Repecki Sur-Reply Dec. Ex. A.) In a second form, dated March 31, 2010, petitioner signed and dated a form stating: "I have been oriented in all of the applicable areas listed above and have had an opportunity to discuss same with unit staff." (Repecki Sur-Reply Dec. Ex. B.) Covered topics included inmate rights and responsibilities, administrative remedies, and telephone privileges. (Repecki Sur-Reply Dec. Ex. B.) In a third form, signed and

9

dated April 8, 2010, petitioner completed an admission orientation checklist stating that he had attended classes that covered, among other things, an "Administrative Remedy Program" and "Telephone Regulations/Procedures." (Repecki Sur-Reply Dec. Ex. C.)

Faced with such evidence, the petitioner again shifts positions. His sur-sur reply acknowledges that he signed these forms, but asserts that he was misled as to their contents. (Docket # 24.) Petitioner states that "he was made to believe that his signature was an acknowledgment that he was consenting to being allowed to enter general population, and that refusal to sign it would result in detention in [the SHU] until further notice . . . ." (Id. at 2.) He contends that at the time he signed the March 29 form, he was not told that he was being given a booklet of institution policies, and was not informed of the policies until 11 days later. (Id.) Petitioner asserts that "irrespective of [his] signature on any documents, he was 'illiterate,'" and therefore susceptible to manipulation and ignorant of the documents that he was signing. (Id. at 3.) He also explains that none of the classes listed on the April 8 form consisted of individual sessions, but rather, presentations conducted by various department staffers, followed by a question-and-answer period. (Id. at 5.)

These shifting representations as to petitioner's receipt of the facility handbook do not support his due process claim. Accepting the truth of any version of petitioner's representations, he does not raise the core due process right owed to an illiterate inmate denied good-time credit, which is the denial of assistance upon request. While "an inmate's right to assistance is limited," an illiterate inmate also has the right to be assigned an assistant "to act as his surrogate – to do what the inmate would have done were he able." Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993) (emphasis in original) (per curiam). The denial of an illiterate inmate's request for assistance may violate due process. See, e.g., Jackson v. Johnson, 15 F. Supp. 2d

10

341, 351 (S.D.N.Y. 1998) (Kaplan, J.). Here, there is no assertion that any such request was denied. Indeed, on March 17, 2011, petitioner addressed a letter to the warden at LSCI Allenwood inquiring as to how an illiterate person should go about receiving instruction on the policies in the facility handbook. (DeSanto Dec. Ex. E.) The warden replied that a unit counselor could provide him with assistance, or he could seek assistance from another inmate. (DeSanto Dec. Ex. E.) As noted, the record submitted by the government reflects that petitioner received exactly such assistance from a fellow inmate when administratively exhausting the sanctions arising from the February 1 incident. (DeSanto Dec. Ex. F.)

There appears to be no authority for the proposition that due process requires prison officials to affirmatively and proactively volunteer assistance for inmates with limited literacy – only that "limited" assistance be permitted in the event that such inmates seek it. Silva, 992 F.2d at 22. When petitioner requested guidance from the LSCI Allenwood warden, he was informed as to its availability; indeed, he had previously availed himself of this help in at least one administrative appeal. (DeSanto Dec. Ex. E-F.) Due process did not require further official action.

Petitioner is not entitled to relief on his due process claim.

IV.   Any Claim that Petitioner Was Subjected to Unequal Treatment on the Basis of Limited Literacy Is Dismissed.

The petition includes several references to petitioner receiving unequal treatment due to his limited literacy. It also expressly asserts that he was denied equal protection. For the purposes of this motion only, the Court assumes the truth of petitioner's assertions concerning his limited literacy, and that such illiteracy constitutes a disability under the applicable laws.[2]

---

[2] See, e.g., Morisky v. Broward Cnty., 80 F.3d 445, 448 (11th Cir. 1996) ("While illiteracy is a serious problem, it does not always follow that someone who is illiterate is necessarily suffering from a physical or mental

11

For the reasons explained, however, the petitioner's assertions of unequal treatment do not entitle him to relief.

A. Petitioner Is Not Entitled to Relief under the ADA or the Rehabilitation Act.

As the BOP notes, the petitioner makes several references to petitioner being treated negatively on the basis of disability, which he describes as "mental in nature." (Pet. at 2; see also Pet. ¶¶ 2 (referencing BOP failure to follow the federal laws "mandating equal rights to disabled inmates"); 7 (discussing BOP failure to afford equal rights to inmates); 18 (asserting that BOP punished him on the basis of disability).) Petitioner asserts that because he is pro se, whether these assertions are interpreted as falling within the ADA or the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., the petition should be generously construed as entitling him to relief. (Reply Mem. at 10-12.)[3]

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This provision is contained within Title II of the ADA, however, and Title II "is not applicable to the federal government." Cellular Phone Taskforce v. FCC, 217 F.3d 72, 73 (2d Cir. 2000) (per curiam). Therefore, petitioner may not maintain an action against the BOP under the ADA.

The BOP also observes that, generously read, the petition could be construed as asserting a claim under the Rehabilitation Act. (Opp. Mem. at 16-17.) The Rehabilitation Act

---

impairment."). There appears to be scant authority on point in this Circuit, and the Court does not need to reach it here.

[3] Although these claims are raised in a section 2241 petition for a writ of habeas corpus, given the petitioner's status as a pro se, the Court will construe these claims as if they are governed by Rule 8, Fed. R. Civ. P., and governed by the motion to dismiss standard of Rule 12(b)(6), Fed. R. Civ. P. See generally Ashcroft v. Iqbal, 556 U.S. 662 (2009).

provides that qualified persons may not, on the basis of disability, be excluded from participation in a program or activity conducted by the executive branch. 29 U.S.C. § 794(a). However, the federal government has not waived sovereign immunity for money damages under the Rehabilitation Act except when a federal agency acts as a provider of financial assistance, a circumstance that is not relevant here. Lane v. Pena, 518 U.S. 187, 192-93 (1996).

To the extent that the petition could be generously read to seek relief under the ADA or the Rehabilitation Act, any such claim is dismissed.

### B. Petitioner Has Not Established an Equal Protection Violation.

The petition asserts that the BOP's conduct "substantially effected his Equal Protection rights . . . ." (Pet. ¶ 25.) It states that equal protection claims may be brought by a class of one, when the single person alleges that he was intentionally treated differently from those similarly situated. (Pet. ¶ 25.)

As an inmate in a federal facility, petitioner's equal protection rights are governed by the Fifth Amendment, although such rights are evaluated "in the same fashion" as an equal protection claim brought under the Fourteenth Amendment. See, e.g., United States v. Martinez, 621 F.3d 101, 108 (2d Cir. 2010). Because persons with disabilities are not considered a suspect class for equal protection purposes, a claim asserting differential treatment based on disability is reviewed pursuant to rational basis scrutiny. See, e.g., Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 366-67 (2001). In other words, "'[s]uch a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" Id. at 367 (quoting Heller v. Doe, 509 U.S. 312, 320 (1993)). To make out a claim that he constitutes a "class of one," petitioner must establish intentionally different treatment from others similarly situated, with "'no rational basis

13

for the difference in treatment.'" Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).

Assuming arguendo that petitioner's limited literacy constitutes a disability, the petition makes no assertion that he was treated differently from other similarly situated persons. As the BOP points out, the equal protection claim is based on the premise that petitioner was not treated differently than other inmates. (Opp. Mem. at 19.) For example, petitioner notes that he "may have been given" a booklet of LSCI Allenwood policies, but that he was not provided with additional explanation "despite his third grade level of reading and writing." (Pet. ¶ 13.) Petitioner's claim is therefore based on assertions that he was treated identically to other inmates, not that he was intentionally singled out and penalized on the basis of illiterate status. See generally Harlen Assocs., 273 F.3d at 499. This does not establish a violation of his equal protection rights.

### V. The Petition's Other Proposed Bases for Relief Are Meritless.

#### A. There Is No Private Right of Action under 18 U.S.C. § 4042.

The petition asserts that the BOP "may" have violated 18 U.S.C. § 4042, which provides for the duties and organization of the BOP. Although the statute guides the standard of care for negligence claims, it does not provide for a private right of action, and any claim for relief premised on section 4042 is therefore dismissed. See Harper v. Williford, 96 F.3d 1526 (D.C. Cir. 1996) (per curiam); Inciarte v. Spears, 1998 WL 190279, at *5 (S.D.N.Y. Apr. 20, 1998) ("Although the Second Circuit has not ruled on whether this statute creates a private cause of action, other circuits have overwhelmingly found that [section 4042] does not create a private

14

cause of action against BOP or its officers and employees for their failure to carry out the duties contained in it.").

B. Petitioner May Not Recover for Emotional Injury.

Generously read, the petition also asserts that the BOP intentionally inflicted emotional distress and acted negligently. (Pet. ¶¶ 11(II), 28.) Pursuant to the PLRA, "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This statute bars claims of mental and emotional injury that purportedly arise from constitutional violations. See, e.g., Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002) ("[P]laintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury."). Because the petition does not allege physical injury, plaintiff may not pursue a claim of negligence or intentional infliction of emotional distress.

In addition, the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (the "FTCA"), requires that to bring a money damages claim against the federal government, a plaintiff must first raise claims to the appropriate agency and the agency must deny the claims in writing. 28 U.S.C. § 2675(a). Petitioner does not assert that he first brought his claims to the BOP. In addition, petitioner may not pursue relief under the FTCA for non-physical injuries incurred while in custody. 28 U.S.C. § 1346(b)(2) ("No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); see also Robinson v.

Sherrod, 631 F.3d 839, 841-42 (7th Cir. 2011) (Posner, J.) (discussing FTCA remedies available to federal inmates).

The petitioner is not entitled to relief for his claims of emotional injury.

CONCLUSION

The petition is DENIED. The Clerk is directed to enter judgment for the respondent.

The certificate of appealability provision, 28 U.S.C. § 2253(c), is inapplicable to this petition brought under § 2241. See Drax v. Reno, 338 F.3d 98, 106 n. 12 (2d Cir. 2003) (citing Murphy v. United States, 199 F.3d 599, 601 n. 2 (2d Cir. 1999)). However, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated:     New York, New York
           June 18, 2013